**REID v. DOUBLEDAY & CO., Inc. et al.**

Civ. 6718.

United States District Court
N. D. Ohio, W. D.

Dec. 30, 1952.

Edward G. Harris, of Harris & Sell, Toledo, Ohio, for plaintiff.

Donald F. Melhorn, of Marshall, Melhorn, Bloch & Belt, Toledo, Ohio, for defendant.

KLOEB, District Judge.

This matter comes before the Court on plaintiff's motion to strike from defendant's answer, and motion for a more definite statement.

Memoranda are filed in support of and in opposition to the motions as required by the rule.

In specification 1 of the motion to strike, plaintiff seeks to have stricken out, under Rule 12(f) of the Federal Rules of Civil Procedure, 28 U.S.C.A., the phrase "as a sub-jobber".

Rule 8 provides, with reference to defenses:

"A party shall state in short and plain terms his defenses to each claim asserted and shall admit or deny the averments upon which the adverse party relies".

Rule 12 (f) provides that upon a motion made by a party the court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter".

Paragraph 1 of the complaint and the corresponding paragraph of the answer, in which the objected to words appear, are as follows:

### Complaint

1. "That at all times between the 3rd day of April, 1941 and the date of the filing of this complaint, the plaintiff was engaged in the business of being a wholesale jobber of books, printed publications and material published for resale or consumption by the general public, and during said times was doing business under the name and style of Edwin M. Reid, doing business as College Book Exchange; and, plaintiff conducted said business during said time at 1825 Collingwood Avenue, Toledo, Ohio; 1114 Jackson Street, Toledo, Ohio; and 4558 Monroe Street, Toledo, Ohio."

### Answer

"1. Denies the allegations of this paragraph except that it admits at all times between the 3rd day of April, 1941, and the date of filing of the complaint the plaintiff was engaged in the business of selling books as a *sub-jobber,* and during said times was doing business under the name and style of Edwin M. Reid, doing business during said time at 1825 Collingwood Avenue, Toledo, Ohio; 1114 Jackson Street, Toledo, Ohio; and 4558 Monroe Street, Toledo, Ohio."

■ It does not seem to us that the words objected to come within the meaning of Rule 12 (f). The clause in which the words appear is not a statement of defense, but a statement of an alleged fact. It does not seem redundant or scandalous. Whether or not it is material or pertinent does not appear at this time.

The same comment applies to specification 6, in which plaintiff seeks to have stricken out from paragraph 26 of the answer the words: "except that it admits that plaintiff has requested defendant to grant to him the same prices and terms as then being offered by defendant to its jobbers", following a general denial of the allegations of paragraph 26 of the complaint.

■ The motion of plaintiff for more definite statement, as an alternative to specification 1, asks the Court for an order requiring the defendant to make definite the meaning of the words "as a sub-jobber" in paragraph 1 of the first defense. We are of the opinion that this motion should be overruled, for the reason that under Rule 12 (e) a motion for a more definite statement may be made only to a pleading to which a responsive pleading is permitted, and under Rule 7 (a) a responsive pleading is not permitted to the answer unless ordered by the Court. The information desired may no doubt be obtained by interrogatory or other discovery means under the rules.

Specification 2 seeks to have stricken out paragraph 32 of the second defense, reading as follows:

"32. Defendant states that the discount schedules offered to certain of its customers which are more favorable than the discount schedule offered to plaintiff do not represent differences or discriminations in the consideration received by defendant for the sale of books to plaintiff and its other customers, but are in the nature of payment by defendant to its customers receiving such more favorable discounts as compensation for services and facilities of value to defendant furnished and made available by such customers, and not furnished or made available by plaintiff, which payment has been made available on proportionally equal terms to plaintiff."

This defense is based upon Sec. 2(d) of the Robinson-Patman Price Discrimination Act, Title 15, § 13 (d), U.S.C.A., reading as follows:

"(d) It shall be unlawful for any person engaged in commerce to pay or contract for the payment of anything of value to or for the benefit of a customer of such person in the course of such commerce as compensation or in consideration for any services or facilities furnished by or through such customer in connection with the processing, handling, sale, or offering for sale of any products or commodities manufactured, sold, or offered for sale by such person, unless such payment or consideration is available on proportionally equal terms to all other customers competing in the distribution of such products or commodities."

Plaintiff contends that the defense is insufficient in that the proviso in the statute states the payment or consideration for services or facilities furnished by customers shall be "available on proportionally equal terms to *all other customers* competing in the distribution of such products or commodities", whereas the language of the defense is that such payment "has been made available on proportionally equal terms *to plaintiff*." We are unable to agree with this contention, for the reason stated in the case of Midland Oil Co. v. Sinclair Refining Co., D.C.Ill.1941, 41 F. Supp. 436, at page 438, wherein the Court said:

"This is not an action by public authority under the Robinson-Patman Act, for the enjoining of some act considered detrimental to the public welfare, and therefore it is not necessary as contended by defendant for the public interest to have been affected by the extent of the defendant's activities. Section 15 gives the right to an individual to sue for damage that he has sustained whether or not the public

interest is affected thereby. * * * The requirements of the Act are met if the defendant is engaged in interstate commerce and has discriminated between some of its purchasers and the plaintiff damaged thereby."

It seems to us the gravamen of the complaint is that the plaintiff was not accorded by the defendant equal treatment with other customers of the defendant of the same class, and that it is immaterial to the issues here whether defendant made equal terms available to all other competing customers.

■ Specification 3 seeks to have stricken out paragraph 33 of the third defense, reading as follows:

"33. Defendant states that the discounts in excess of 43% on trade books made available to The Baker & Taylor Co.; A. C. McClurg Co.; The American News Company, Inc.; J. K. Gill; Diamondstein Book Company and Bookazine were made in good faith to meet an equally low price of a competitor."

This defense seems to be pleaded in the language of the statute, Title 15, § 13 (b), reading as follows:

"* * * That nothing contained in sections 12, 13, 14–21, and 22–27 of this title shall prevent a seller rebutting the prima-facie case thus made by showing that his lower price or the furnishing of services or facilities to any purchaser or purchasers was made in good faith to meet an equally low price of a competitor, or the services or facilities furnished by a competitor."

In the case of Standard Oil Co. v. Federal Trade Commission, 1951, 340 U.S. 231, 71 S.Ct. 240, 248, 95 L.Ed. 239, the Court held:

"(c) There has been a widespread understanding that, under the Robinson-Patman Act, it is a complete defense to a charge of price discrimination for the seller to show that its price differential has been made in good faith to meet a lawful and equally low price of a competitor; and this Court sees no reason to depart now from that interpretation."

It seems to us that this specification should be overruled.

■ In specification 4, plaintiff seeks to have stricken out the defense of res adjudicata set forth in paragraph 34 of the fourth defense, reading as follows:

"34. Defendant states that the same issues raised in this case were heretofore raised in the action entitled Doubleday and Company, Inc. v. Edwin M. Reid in the Municipal Court of Toledo, Lucas County, Ohio, a court of record, being Case No. 177662 on the docket of said court; that said issues were determined adversely to said Edwin M. Reid and final judgment in said action was rendered upon the merits in favor of this defendant, Doubleday and Company, Inc. and against said Edwin M. Reid, plaintiff herein; that no appeal was had or can now be had from said judgment, and that by reason thereof, the said judgment is res adjudicata as to the claim of plaintiff in this present action."

It seems to us whether or not the defense of res adjudicata is a good defense in this case depends upon evidence as to the issues involved and the determination made in the prior action, and perhaps other matters of evidence, and that the question cannot be determined upon this motion.

In specification 5, plaintiff seeks to have stricken out paragraph 35 of the fifth defense, involving the statute of limitations of Ohio which may be applicable, reading as follows:

"35. Defendant states that any claim alleged in plaintiff's complaint herein which accrued prior to February 19, 1951, is barred by the applicable statute of limitations of the State of Ohio, to wit Section 11225 of the General Code of Ohio."

This action is brought under the Robinson-Patman Act, 15 U.S.C.A. § 13 et seq., which imposes both civil and criminal sanctions for violation, the civil liability to the person aggrieved being one for tre-

ble damages. Sec. 4 of the Clayton Act, 15 U.S.C.A. § 15, applies to the remedy and provides:

"Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

No reference is made in this statute as to the period of limitations for bringing such actions, and it is conceded that reference must be had to the law of the forum to determine this question. Chattanooga Foundry & Pipe Works v. Atlanta, 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241.

The two relevant sections of the General Code of Ohio establishing a statute of limitations are the following:

"Sec. 11225. Time limitations for bringing certain actions. An action for libel, slander, assault, battery, malicious prosecution, false imprisonment or malpractice; or upon a statute for a penalty or forfeiture, shall be brought within one year after the cause thereof accrued, provided that an action by an employee for the payment of unpaid minimum wages, unpaid overtime compensation or liquidated damages by reason of the non-payment of minimum wages or overtime compensation, shall be brought within two years after the cause thereof accrued; provided that if the action accrued prior to the effective date of this act, and shall not then have been barred by the applicable statute of limitations in effect prior to such date, the action shall not be barred if it shall be brought within 180 days after the effective date of this act."

"Sec. 11222. Contract not in writing. An action upon a contract not in writing, express or implied, or upon a lia-

bility created by statute other than a forfeiture or penalty, shall be brought within six years after the cause thereof accrued."

The problem for determination is whether the liability imposed by Section 4 of the Clayton Act is one for a "penalty or forfeiture", as those terms are defined in Ohio law.

Under the holding of the Supreme Court in Erie Railroad Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, and the later cases of Six Companies of California v. Joint Highway District, 1940, 311 U.S. 180, 61 S.Ct. 186, 85 L.Ed. 114, West v. American Tel. & Tel. Co., 1940, 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139, Stoner v. New York Life Ins. Co., 1940, 311 U.S. 464, 61 S.Ct. 336, 85 L.Ed. 284, it is the duty of the Federal Court to ascertain the State law from all available sources and to follow the rule announced by the Supreme Court of the State or an intermediate State Court, while in Fidelity Union Trust Co. v. Field, 1940, 311 U.S. 169, 61 S.Ct. 176, 85 L.Ed. 109, the Court held that the Federal Court of New Jersey was bound to follow the decisions of the New Jersey Court of Chancery, a trial court. The question also came up in King v. Order of United Commercial Travelers of America, 1948, 333 U.S. 153, 68 S.Ct. 488, 92 L.Ed. 608, in which the Supreme Court granted certiorari in order to determine whether the Circuit Court of Appeals' refusal to follow the only South Carolina decision directly in point, a decision of a Court of Common Pleas, was consistent with the Rules of Decision Act as applied in Erie R. Co. v. Tompkins, and the Court there held that (Syl.):

"* * * a federal court, in a diversity of citizenship case arising in South Carolina and turning on a question of state law on which there has been no decision by the highest court of the State, need not follow a decision on the question by a South Carolina county court of common pleas, whose decisions are not reported and, under state practice, are binding only on the parties to the particular case

and do not constitute precedents in any other case in that court or in any other court of the State." · ·
4 Cir., 161 F.2d 108, affirmed. · ·
The Court said 333 U.S. at page 158, 68 S.Ct. at page 491:

"* * * The Erie R. Co. case left open, however, the more difficult question of the effect to be given to decisions by lower state courts on points never passed on by the highest state court.

"Two years later, a series of four cases presented some aspects of that question. In three of the cases this Court held that federal courts are bound by decisions of a state's intermediate appellate courts unless there is persuasive evidence that the highest state court would rule otherwise. (Citing cases.) In the fourth case, Fidelity Union Trust Co. v. Field, 1940, 311 U.S. 169, 61 S.Ct. 176, 85 L.Ed. 109, the Court went further and held that a federal court had to follow two decisions announced four years earlier by the New Jersey Court of Chancery, a court of original jurisdiction."

The Court pointed out in the Fidelity case that the status of the New Jersey Court of Chancery was not that of the usual *nisi prius* court; that it had state-wide jurisdiction; that its standing on the equity side was comparable to that of New Jersey's intermediate appellate courts on the law side; and that chancery decrees were ordinarily treated as binding in later cases in chancery. 333 U.S. at page 159, 68 S.Ct. 488.

In concluding, the Court said that it was "* * * deciding only that the Circuit Court of Appeals did not have to follow the decision of the Court of Common Pleas for Spartanburg County. We do not purport to determine the correctness of its ruling on the merits. Nor is our decision to be taken as promulgating a general rule that federal courts need never abide by determinations of state law by state trial courts. As indicated by the Fidelity Union Trust Co. case, other situations in other states may well call for a different result." 333 U.S. at page 162, 68 S.Ct. at page 493.

· It is the further contention of counsel for defendant that the statutes of Ohio have characterized as a "penalty" a liability created by statute in favor of an aggrieved person where the liability was greater than the actual damages suffered; and that, where the statute has not employed the words "penalty" or "forfeiture" the Ohio Courts have consistently construed such statutes as imposing a penalty.

It is the contention of counsel for plaintiff that the cause of action sued on in this case is for a "liability created by statute" rather than for a "penalty", and reliance is had principally upon the case of Hocking Valley R. Co. v. New York Coal Co., 6 Cir., 1914, 217 F. 727.

It is not disputed that a suit to recover triple damages for alleged violation of the Robinson-Patman Act is an action upon a liability created by statute, and that an action to recover a penalty or forfeiture provided by statute is also upon a liability created by statute. The question remains, under the applicable law of Ohio, is the cause of action here sued upon "a penalty or forfeiture", and therefore barred after one year under Sec. 11225, G.C.O., or is it a "liability created by statute other than a forfeiture or penalty", and therefore not barred until after six years under Sec. 11222, G.C.O.?

No Ohio case has been cited which directly passes upon this question, but counsel for defendant in this case and in the case of the plaintiff versus Prentice-Hall, Inc., No. 6797, in which the same question has been raised, contend that a suit for treble damages under the Federal anti-trust laws should be construed as an action upon a statute for a "penalty or forfeiture" within the meaning of Sec. 11225, G.C.O., on the ground that it is punitive in its nature since it permits the recovery of three times the damage sustained as punishment for the wrong done and as a deterrent to the continuation of any activity by the wrongdoer which violates the Federal antitrust laws, and that, in view of the decisions of the Ohio courts in cases

involving analagous questions, the Ohio courts would apply to the cause of action here the limitations of Sec. 11225, G.C.O., and that, therefore, in the absence of a settled decision on the subject, this Court should give to such statutes a construction which it believes the courts of the State would give if the identical proposition was submitted to them, citing Christian v. Kint, D.C., 87 F.Supp. 977, 980. In support of their argument, counsel for defendant refer to the following Ohio cases:

Cases under the antitrust law of Ohio, known as the "Valentine Act", Secs. 6390–6402-1, G.C.O., which permits the recovery of double damages for violation of the law: List v. Burley Tobacco Growers Coop. Ass'n, 1926, 114 Ohio St. 361 at pages 361, 378, 151 N.E. 471, 476, referring to the "penalizing and punishing" effect of the law; Foster v. Ankenbauer, C. P. Hamilton Co., 1913, 14 Ohio N.P.N.S., 637, 640, referring to the damages under the law as "in the nature of a penalty"; Merkel v. Maybaugh, C. P. Tuscarawas County, 1945, 33 Ohio O. 284, 286, referring to "punitive damages" and "penalty" under the law; Gildehaus Co. v. Busse, C. P. Hamilton Co., 1916, 19 Ohio N.P. N.S. 263, at page 264, referring to "the penalty" provided in the law; and Barron, Boyle & Co. v. Pittsburgh Plate Glass Co., Sup. Ct. Cincinnati 1900, 7 Ohio N.P. 528, referring to the action as being one to recover a "penalty".

A case under the Public Utilities Act: Warner v. Baltimore & O. Railway Co., C. P. Cuyahoga Co., 1911, 11 Ohio N.P. N.S. 487, 489, in which the Court referred to the case as an "action to recover treble damages" under the Public Utilities Act of Ohio, now Secs. 614–1 to 614–68 G.C.O., and stated that plaintiff was seeking "punitive damages". The section of the statute, § 614–65, G.C.O., providing, in case of violation, for a fine of not less than $100 nor more than $1,000, or imprisonment for not more than two years, or both, for each day the offense continues, is headed "Penalty", while Sec. 614–68, G.C.O. provides for the recovery of treble damages by the person injured in consequence of the violation, stating that any recovery

under that section "shall in no manner affect a recovery by the state for any penalty" provided in the Act, and is headed "Treble damages on violations".

Railroad cases: The statute involved in these cases provided, in case of overcharge for freight or passenger transportation, for the recovery of double the amount of the overcharge but not less than $150. The case of Cincinnati S. & C. Railroad Co. v. Cook, 1881, 37 Ohio St. 265, 270, referred to the amount of recovery sought over the actual damage as being "in the nature of a penalty" and "punishment rather than compensation"; Railway Co. v. Furnace Co., 1892, 49 Ohio St. 102, 115, 30 N.E. 616, which referred to the judgment as being for a "penalty" and, therefore, not entitled to interest; Cleveland, C. & St. L. Railway Co. v. Wells, 1899, 61 Ohio St. 268, 270, 55 N.E. 827, which referred to the statute as "highly penal"; Baltimore & O. Railroad Co. v. Hollenberger, 1907, 76 Ohio St. 177, 179, 81 N. E. 184, in which the Court dismissed an action to recover the overcharge, stating that the action was one to recover "a penalty" and had not been filed in the County where the cause of action arose, the Ohio statute in effect at that time providing that an action to recover a penalty, with certain exceptions, had to be brought in the County where the cause of action arose; Pennsylvania Co. v. O'Connell, 84 Ohio St. 218, 95 N.E. 773, which referred to the action as being one for the recovery of "a penalty" which must be brought in the County where the cause of action arose, and also referred to but did not pass upon the one year statute of limitations applicable to a penalty.

Defendant also cites DeWitt v. State ex rel. Crabbe, 108 Ohio St. 513, at page 527, 141 N.E. 551, at page 555, involving the construction of Sec. 1465–74 of the Workmen's Compensation Act of Ohio, providing for the recovery in an action in the name of the State of the amount of an unpaid award, together with a 50% penalty, in which the Court referred to the "added penalty of 50 per cent", as a "penalty pure and simple", stating that "The statute so denominates it, and the

state concedes it in argument"; Higley v. First Nat. Bk., 1876, 26 Ohio St. 75, an action under Sec. 30 of the National Banking Act, 12 U.S.C.A. § 86, providing for the recovery of "twice the amount of the interest thus paid" where more than the legal rate of interest was charged, in which the Court referred to the amount of the recovery as "in the nature of a penalty", and that the statute must be strictly construed, and the case of Hade v. McVay, Allison & Co., 1878, 31 Ohio St. 231 to the same effect.

Counsel for defendant also cited certain statutes of Ohio as examples of statutory construction placed upon the word "penalty"; Sec. 8623-127, caption *"Penalty for failure to comply with certain requirements"*, which provides that a stockholder may recover from a corporation a penalty of $100 and a further penalty of $10 for every day the corporation is in default or furnishing a certified copy of a statement of profit and loss and a balance sheet; Sec. 12181 and Sec. 12182, relating to habeas corpus proceedings, which are captioned, respectively, *"Penalty upon clerk for refusal to issue the writ"* and *"Penalty for disobeying the writ"*; Sec. 11193 (repealed) which was headed *"Penalty"*, providing for a penalty for the issuing of a marriage license by a judge without following the statutory requirements.

Defendant also cites cases brought to recover gambling losses under the Ohio statutes permitting the recovery by the loser, or a person dependent upon him, or other person, Secs. 5966–5969, G.C.O. for the amount of the loss with exemplary damages of not less than $50 nor more than $500; Cooper v. Rowley, 29 Ohio St. 547; Harrington v. Halliday, 4 Ohio N.P.N.S. 281; Paul v. Groene, 17 Ohio Dec. 738, and Worland v. Emerine, 1927, unreported dec., C. A. Lucas Co., Vol. 33, p. 187.

The case of Cooper v. Rowley, supra, was an action brought by the plaintiff to recover gambling losses under the statutes brought more than three and one-half years from the time of the loss, in which the Court held that the legislature, by the language of the Act, "intended and regarded the same to be recovered as a penalty or

forfeiture", and that the one year limitation of Sec. 11225, G.C.O. applied.

Defendant also cites the civil rights statute of Ohio, secs. 12940 and 12941, G.C. O., and the case of Loftin v. Loew's, Inc., 75 Ohio App. 448, 62 N.E.2d 535. Sec. 12940 is headed *"Penalty for Denial of Privileges at Inns and Other Places by Reason of Color or Race"*, and Sec. 12941 is headed *"Further Penalty"*. The Court in Loftin v. Loew's, Inc., supra, held that the liability provided in Sec. 12941, G.C.O. is a "penalty" as that word is used in Sec. 11225, G.C.O., the one year statute of limitations.

Counsel for defendant also cite Ewing v. Toledo Sav. Bk., 43 Ohio St. 31, 1 N.E. 138, in which the Court held that the forfeiture of usurious interest must be regarded as a "penalty", the statute involved, 72 O.L. 186, containing the clause "and shall be subject for the violations thereof to the same *penalties* as natural persons".

Further cases cited by counsel for defendant are: Lawler v. Burt, 1857, 7 Ohio St. 340, 345, where the Court said that the provision of law making every stockholder, shareholder or partner individually liable for the whole amount of bonds, bills, notes, etc., of the bank "cannot be regarded as contemplating anything more than the imposing of a *penalty* to the amount of the bond or note issued upon the stockholder, shareholder or partner"; State v. Kelly, 1877, 32 Ohio St. 421, 431, an action on a bond given by the County Treasurer under a statute which made him liable to an action on his bond for the use of a county in double the amount for which he was liable under the statute, in which the Court held that it was an action upon the bond and that the limitation of ten years applicable to bonds was the proper one rather than the one year statute, stating that the statute which gives the right of action "does not give a penalty or forfeiture against the Treasurer".

It would not seem that any of the above cases or references can be said to establish the law of Ohio applicable to this case, but it would rather appear that the controlling law of Ohio is set forth in the

syllabus of the case of Pittsburgh, Ft. W. & C. Railway Co. v. Methven, 1871, 21 Ohio St. 586. In this case, the Court held (Syl. 1):

"If a statute in the nature of a police regulation gives a remedy for private injuries resulting from the violations thereof, and also imposes fines and penalties at the suit of the public for such violations, the former will not be regarded in the nature of a penalty unless so declared."

This case does not seem to have been cited in any of the Ohio cases referred to above, but the rule announced is in line with the decisions in the cases of Huntington v. Attrill, 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123; Brady v. Daly, 175 U.S. 148, 20 S.Ct. 62, 44 L.Ed. 109; Hocking Valley R. Co. v. New York Coal Co., 6 Cir., 1914, 217 F. 727; Sullivan v. Associated Bill Posters & Distributors, 2 Cir., 1925, 6 F.2d 1000, 42 A.L.R. 503; Fields v. Washington, 3 Cir., 1949, 173 F.2d 701; City of Atlanta v. Chattanooga Foundry & Pipe Co., C.C.Tenn.1900, 101 F. 900, 906, Id., 6 Cir., 127 F. 23, Id., 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241, in which the Court cited, Pittsburgh, Ft. W. & C. Railway Co. v. Methven, supra, and stated:

"It would be unusual to discover that a statute inflicted punishment for infringement of its provisions by fine and imprisonment, or either, and again in the form of pecuniary penalty for the same act. A sound rule of interpretation would be that when a statute inflicts punishment by way of fine and imprisonment at the suit of the state for a public wrong affecting the whole community, and also confers a remedy on a party for private injuries resulting from breaches of the statute, the latter will not be regarded as a penalty unless the statute so declares. It was accordingly so decided by the supreme court of Ohio in Pittsburgh & Ft. W. & C. Railway Co. v. Methven, 21 Ohio St. 586. A statute providing for a fine or penalty usually either fixes the amount, or prescribes maximum and minimum limits within which the amount must be fixed by the court or

jury, as the punishment, and the amount bears no direct relation to damages sustained by private injury. The amount of damages which may be recovered in the remedial action afforded by section 7 of the act in question is determined by the injury sustained, and the actual compensation therefor increased to treble that amount. * *"

In the opinion of the Sixth Circuit Court of Appeals in the case, the Court stated on this subject:

"* * * The seventh section alone gives any remedy to one injured by such a forbidden combination or contract, and that measures the relief by the 'damages by him sustained,' costs of suit, and his reasonable attorney's fees. The remedy is not given to the public, for no one may bring the action save the person 'who shall be injured,' etc., and the recovery is for the sole benefit of the person so injured and suing. It is not reasonable to construe the remedy so conferred as a penal action, for that would be to add to the punishment by fine or imprisonment imposed by the other sections of the act an additional punishment by way of pecuniary penalty. The plain intent is to compensate the person injured. True, the compensation is to be three times the damage sustained. But this enlargement of compensation is not enough to constitute the action a penal action, within the meaning of section 1047, Rev.St. (U.S.Comp.St.1901, p. 727). * * *

"The whole subject of penal and compensatory actions has been so thoroughly considered in Huntington v. Attrill, 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123, and Brady v. Daly, 175 U.S. 148, 20 S.Ct. 62, 44 L.Ed. 109, as well as by the very full and able opinion of Judge Clark in the court below in disposing of a demurrer to a plea, that we feel we can add nothing to the subject." 127 F.2d at pages 28, 29.

The Supreme Court in this case, 203 U.S. 390, 27 S.Ct. 65 affirmed the Court of Ap-

peals, stating its views on the subject of the limitations applicable as follows:

"The limitation of five years in Rev. Stat. § 1047, * * * to any 'suit or prosecution for any penalty or forfeiture, pecuniary or otherwise, accruing under the laws of the United States,' does not apply. The construction of the phrase 'suit for a penalty,' and the reasons for that construction, have been stated so fully by this court that it is not necessary to repeat them. Indeed the proposition hardly is disputed here. Huntington v. Attrill, 146 U.S. 657, 668, 13 S.Ct. 224, 36 L.Ed. 1123, 1128; Brady v. Daly, 175 U.S. 148, 155, 156, 20 S.Ct. 62, 44 L.Ed. 109." 203 U.S. at page 397, 27 S.Ct. at page 66.

The Sixth Circuit Court of Appeals, in the case of Bowles v. Farmers National Bank, 1945, 147 F.2d 425, 429 also recognized the distinction above referred to, where it stated:

"The Administrator contends that the statute cannot be remedial as to the purchaser and penal as to the Government. This contention runs against the weight of very respectable authority cited in Huntington v. Attrill, supra, 146 U.S. 657 at pages 667, 668, 13 S.Ct. 224, 36 L.Ed. 1123. Cf. Sullivan v. Associated Billposters & Distributors, 2 Cir., 6 F.2d 1000, 42 A.L.R. 503. * * *"

 As to the rule of construction to be followed to the statutes of limitation of Ohio involved in this case, it seems to us that the law is well stated in the syllabus of Crawford County Tr. & Svgs. Bk. v. Crawford County, 8 Cir., 1933, 66 F.2d 971:

"4. Where substantial doubt exists as to which of two limitation statutes is applicable, longer period will be applied." Citing on this point Payne v. Ostrus, 8 Cir., 50 F.2d 1039, 1042, 77 A.L.R. 531; Hughes v. Reed, 10 Cir., 46 F.2d 435, 440.

"5. Where federal court is unable to determine what rule is to be deduced from state decisions in regard to application of statute of limitations to circumstances involved, federal court must determine matter unaided by state decisions". Citing on this point Concordia Ins. Co. v. School District, 282 U.S. 545, 552, 553, 51 S.Ct. 275, 75 L.Ed. 528, and Edward Hines Yellow Pine Trustees v. Martin, 268 U.S. 458, 463, 45 S.Ct. 543, 69 L.Ed. 1050.

The case of Hocking Valley R. Co. v. N. Y. Coal Co., 6 Cir., 1914, 217 F. 727, 730, supports the contention of the plaintiff in this case on this point. The Court there held that the cause of action, based on a violation of the statute of the State of Ohio requiring railroad companies to give equal treatment to shippers of the same class and provided that the injured party may recover his damages sustained but that the amount should not be less than $500, was one created by statute and subject to the six year limitation of Sec. 11222, G.C.O.

 A number of Federal Courts have had occasion to consider the question here as to whether an action for triple damages under the Federal Antitrust Act was a "penalty or forfeiture" or "a liability created by statute". The majority have held that it was not an action for a penalty but rather for a liability created by statute. Shelton Electric Co. v. Victor Talking Machine Co., D.C.N.J.1922, 277 F. 433; Seaboard Terminals Corp. v. Standard Oil Co., D.C.N.Y.1938, 24 F.Supp. 1018; Hansen Packing Co. v. Swift & Co., D.C.N.Y.1939, 27 F.Supp. 364; Momand v. 20th Century Fox Film Corp., D.C.Okl.1941, 37 F.Supp. 649; Momand v. Universal Film Exchange, D.C.Mass.1942, 43 F.Supp. 996; United West Coast Theatres Corp. v. South Side Theatres, D.C.Cal.1949, 86 F.Supp. 109; Christensen v. Paramount Pictures, D.C. Utah 1950, 95 F.Supp. 446; Levy v. Paramount Pictures, D.C.Cal.1952, 104 F.Supp. 787; Dipson Theatres v. Buffalo Theatres, D.C.N.Y.1948, 8 F.R.D. 86; Sullivan v. Associated Bill Posters & Distributors, 2 Cir., 1925, 6 F.2d 1000, 42 A.L.R. 503; Burnham Chemical Co. v. Borax Consolidated, 9 Cir., 1948, 170 F.2d 569.

Contra: Harvey v. Booth Fisheries Co., D.C.Wash.1915, 228 F. 782; Haskell v.

Perkins, D.C.N.J.1928, 28 F.2d 222; Hoskins Coal & Dock Corp. v. Truax Traer Coal Co., 7 Cir., 1951, 191 F.2d 912; Schiffman Bros. Co. v. Texas Co., 7 Cir., 1952, 196 F.2d 695.

It is our conclusion that under both the Ohio law and the Federal law the cause of action here sued upon is remedial rather than penal and that Sec. 11222, G.C.O. governs.

Specification 5 of the plaintiff's motion is sustained.

An order may be drawn accordingly.